**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

MARY J. HICKS, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF ALVA HICKS JR. AND MARY J. HICKS INDIVIDUALLY,

Plaintiff,

v.

THE BOEING COMPANY, et al.,

Defendants.

Civil Action No. 13-393-SLR-SRF

**REPORT AND RECOMMENDATION**

## I. INTRODUCTION

Presently before the court in this diversity personal injury action is a Motion to Remand to State Court ("Motion to Remand" or "Motion") filed by the Plaintiff, Mary J. Hicks ("Plaintiff"), on the ground that the removing party, Defendant United Technologies Corporation ("UTC"), did not meet the requirements for removal under 28 U.S.C. § 1442. (D.I. 31) UTC opposes Plaintiff's Motion. (D.I. 44) For the reasons that follow, I recommend that the court DENY Plaintiff's Motion to Remand.

## II. BACKGROUND

Plaintiff filed this action against UTC and other defendants on January 18, 2013, in the Superior Court of Delaware. (D.I. 1, Ex. A) The complaint alleges that Alva N. Hicks, Jr. was exposed to asbestos through personal construction work and throughout his employment. (D.I. 1, Ex. A ¶ 21; D.I. 73)

On March 11, 2013, UTC removed the action to this court. (D.I. 1) Plaintiff filed the pending Motion to Remand on April 12, 2013. (D.I. 13)

## III. LEGAL STANDARD

The federal officer removal statute permits removal of a state court action to federal court when, *inter alia*, such action is brought against "[t]he United States or an agency thereof of any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office." 28 U.S.C. § 1442(a)(1). The party removing an action to federal court bears the burden of proving that removal is appropriate. *See Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990). In the Third Circuit, the provisions of the federal officer removal statute are to be "broadly construed."[1] *Sun Buick, Inc. v. Saab Cars USA, Inc.*, 26 F.3d 1259, 1262 (3d Cir. 1994). The Supreme Court has explained that "the right of removal is absolute for conduct performed under color of federal office, and has insisted that the policy favoring removal 'should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1).'" *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981) (citation omitted).

To properly establish removal under Section 1442(a)(1), a defendant must show the following:

> (1) it is a "person" within the meaning of the statute;
> (2) the plaintiff's claims are based upon the defendant's conduct "acting under" a federal office;
> (3) it raises a colorable federal defense; and
> (4) there is a causal nexus between the claims and the conduct performed under color of a federal office.

---

[1] The Third Circuit draws a distinction between the removal provisions of Section 1441, which "'are to be strictly construed against removal and all doubts should be resolved in favor of remand,"' *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990) (quoting *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987)), and the provisions of the federal officer removal statute, which are to be "broadly construed." *Sun Buick, Inc. v. Saab Cars USA, Inc.*, 26 F.3d 1259, 1262 (3d Cir. 1994). *See also Deuley v. Dyncorp Int'l, Inc.*, 588 F. Supp. 2d 539, 542 (D. Del. 2008) ("It is recognized that [section 1442(a)(1)] is not to be construed narrowly."); *Parlin v. Dyncorp Int'l, Inc.*, 579 F. Supp. 2d 629, 634 (D. Del. 2008) ("Unlike section 1441, which is strictly construed, section 1442(a) is 'liberally construed to give full effect to the purposes for which [it was] enacted.'" (alteration in original) (citations omitted)).

*Feidt v. Owens Corning Fiberglas Corp.*, 153 F.3d 124, 127 (3d Cir. 1998) (citing *Mesa v. California*, 489 U.S. 121, 129 (1989)).

As to the first element of the statute, this court has held that "defendants, as corporations, are 'persons' within the meaning of [Section 1442(a)(1)]." *In re Asbestos Litig.* (*Seitz*), 661 F. Supp. 2d 451, 454 (D. Del. 2009) (citing *Good v. Armstrong World Indus., Inc.*, 914 F. Supp. 1125, 1128 (E.D. Pa. 1996)). *See also Kirks v. GE*, 654 F. Supp. 2d 220, 223 (D. Del. 2009).

To satisfy the second element, the defendant "must demonstrate that a 'federal office' was the source of the specific act for which the contractor now faces suit." *In re Asbestos Litig.* (*Seitz*), 661 F. Supp. 2d at 454. "The second factor has been described as requiring 'a showing that the acts forming the basis of the state suit were performed pursuant to an officer's direct orders or comprehensive and detailed regulations.'" *Id.* (quoting *Good*, 914 F. Supp. at 1128).

The third element "requires a moving defendant to demonstrate that there is a colorable defense to a plaintiff's claims." *Id.* (citing *Megill v. Worthington Pump, Inc.*, 1999 WL 191565, at *3 (D. Del. Mar. 26, 1999)). The colorable defense asserted here is the federal common law government contractor defense. According to the Supreme Court, a federal contractor will not be liable for design defects in equipment under state tort laws when:

> (1) the United States approved reasonably precise specifications;
> (2) the equipment conformed to those specifications; and
> (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States.

*Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988).

Although the *Boyle* Court applied the government contractor defense to a design defect products liability claim, federal courts have subsequently recognized the applicability of the defense to state law failure to warn clams. *See, e.g.*, *MacQueen v. Union Carbide Corp.*, 2013 WL 6571808, at *3 (D. Del. Dec. 13, 2013), *report and recommendation adopted*, 2014 WL 108535

(D. Del. Jan. 9, 2014); *Walkup v. Air & Liquid Sys. Corp.*, 2013 WL 5448623, at *2 (D. Del. Sept. 26, 2013), *report and recommendation adopted*, 2013 WL 5798701 (D. Del. Oct. 24, 2013); *In re Asbestos Litig.* (*Seitz*), 661 F. Supp. 2d at 454; *Kirks*, 654 F. Supp. 2d at 224-25. "However, because 'design defect and failure to warn claims differ practically as well as theoretically,' courts have required the government approval to 'transcend rubber stamping' for the defense to shield a government contractor from failure to warn liability."[2] *Hagen*, 739 F. Supp. 2d at 783 (quoting *Tate v. Boeing Helicopters*, 55 F.3d 1150, 1156-57 (6th Cir. 1995)). Consequently, in cases involving failure to warn claims, federal courts have tailored the *Boyle* elements as follows:

> (1) the United States exercised its discretion and approved the warnings, if any;
> (2) the contractor provided warnings that conformed to the approved warnings; and
> (3) the contractor warned the United States of the dangers in the equipment's use about which the contractor knew, but the United States did not.

*MacQueen*, 2013 WL 6571808, at *4 (quoting *Hagen*, 739 F. Supp. 2d at 783). *See also Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 1003-04 (7th Cir. 1996); *Tate*, 55 F.3d at 1157.

The final requirement for removal under Section 1442(a)(1) is that the defendant demonstrate a causal nexus between the conduct being supervised by the federal office and the conduct deemed offensive in the plaintiff's complaint. *See In re Asbestos Litig.* (*Seitz*), 661 F. Supp. 2d at 455. "To do so, a defendant seeking removal must 'by direct averment exclude the possibility that [the defendant's action] was based on acts or conduct of his not justified by his

---

[2] This court has previously explained that in actions involving allegations of failure to warn of the dangers of asbestos, the removing defendant

> must show that the applicable federal contract includes warning requirements that significantly conflict with those that might be imposed by state law. Moreover, it seems clear to us[] that *Boyle's* requirement of government approval of "reasonably precise specifications" mandates that the federal duties be imposed upon the contractor. The contractor must show that whatever warnings accompanied a product resulted from a determination of a government official, . . . and thus that the government itself "dictated" the content of the warnings meant to accompany the product.

*In re Asbestos Litig.* (*Seitz*), 661 F. Supp. 2d at 455 (quoting *In re Joint E. & S. Dist. N.Y. Asbestos Litig.*, 897 F.2d 626, 630 (2d Cir. 1990)).

federal duty.'" *Hagen*, 739 F. Supp. 2d at 785 (alteration in original) (quoting *Mesa*, 489 U.S. at 132).

## IV. DISCUSSION

The dispute in this case turns on whether UTC's evidence supporting the government contractor defense is sufficient to meet the requirements for removal under Section 1442(a)(1). Plaintiff claims that UTC's evidence is "speculative" (D.I. 32 at 7) and fails to establish a colorable federal defense or satisfy the elements for removal. (*Id.* at 1-3, 3-8; D.I. 45 at 2-3) On the other hand, UTC contends that its affidavits and supporting materials demonstrate that the United States Army/Air Force exercised control over UTC's manufactured products and accompanying written materials and, consequently, the government contractor defense precludes liability under state law for defective product design and failure to warn. (D.I. 1 at 4-8; D.I. 44 at 3-8)

As this court has observed in several recent cases, there is a split in authority concerning the applicable standard for assessing the colorability of a proffered government contractor defense. *See MacQueen*, 2013 WL 6571808, at *5-7; *Walkup*, 2013 WL 5448623, at *3-5. In short, the split "'‘boils down to an argument over what a defendant must proffer to defeat a plaintiff's motion for remand.'"[3] *Walkup*, 2013 WL 5448623, at *4 (quoting *Hagen*, 739 F. Supp. 2d at 777).

Consistent with the line of reasoning of this court in *MacQueen* and *Walkup*, and "the trend in this Circuit to broadly construe the federal officer removal statute," *Walkup*, 2013 WL 5448623, at *4 (citing *Kirks*, 654 F. Supp. 2d at 225-26), Plaintiff's motion to remand should be denied if

---

[3] In *Walkup*, this court explained:

> On one side of the split, "the colorable defense standard is not an onerous one to satisfy." For example, some courts require only that a colorable defense be plausible in order to meet the requirements for removal under Section 1442(a)(1). "Yet other courts . . . [–] albeit not explicitly – apply a heightened standard at the remand stage that requires courts to ‘carefully weigh the plausibility of the proffered defense.'"

*Walkup*, 2013 WL 5448623, at *4 (quoting *Hagen*, 739 F. Supp. 2d at 780).

UTC "identifies facts which, viewed in the light most favorable to [UTC], would establish a complete defense at trial." *Hagen*, 739 F. Supp. 2d at 783.

As discussed below, UTC has satisfied this standard and each element of the federal officer removal statute. Consequently, Plaintiff's Motion to Remand should be denied.

**A. Whether UTC is a "Person" Within the Meaning of Section 1442(a)(1)**

There is no dispute that UTC, as a corporation, is a "person" within the meaning of the statute. *See Kirks*, 654 F. Supp. 2d at 223. Therefore, the first element of the federal officer removal statute has been met.

**B. Whether Plaintiff's Claims Are Based Upon UTC's Conduct "Acting Under" a Federal Office**

As to the second element, UTC has shown that Plaintiff's design defect and failure to warn claims are based upon UTC's conduct "acting under" a federal office.[4] Specifically, UTC has submitted the affidavit of Allan J. Shiffler ("Mr. Shiffler") to demonstrate "that the acts forming the basis of [Plaintiff's claims] were performed pursuant to . . . direct orders or comprehensive and detailed regulations" of the office of the Army/Air Force and its officers. *See In re Asbestos Litig. (Seitz)*, 661 F. Supp. 2d at 454.

Mr. Shiffler is a former employee of Pratt & Whitney, an unincorporated division of UTC (D.I. 1 ¶ 13 n.1), who worked as an engineer on the development and manufacture of engines used

---

[4] "Because a defendant's government contractor defense in a failure to warn case is only colorable if the defendant identifies facts demonstrating the government's actions 'transcend rubber stamping,' any defendant who satisfies the colorable defense requirement will necessarily meet the acting under requirement of Section 1442(a)(1) as well." *Hagen*, 739 F. Supp. 2d at 784-85 (citation omitted). Thus, in cases where, as here, a removing defendant asserts the government contractor defense to a plaintiff's failure to warn claim, "the burden for demonstrating the defendant acted under an officer of the United States is lower than that associated with demonstrating a colorable federal defense." *Id.* at 785.

in military aircrafts, from 1966 to 2003.[5] (*Id.*, Ex. C ¶¶ 2-4) According to his affidavit, Mr. Shiffler has "personal knowledge of the extent of involvement of the U.S. Army and Air Force . . . in the design, manufacture, approval, and receipt of the military aircraft engines designed and manufactured by [UTC]." (*Id.*, Ex. C ¶ 6)

With respect to product design, Mr. Shiffler states, in relevant part:

> 7. [UTC], during all aspects of its design and manufacture of military aircraft engines . . . performed its work under the immediate supervision of the Army/Air Force. This supervision and control was exercised through contract documents, design and construction drawings, written specifications, and personal oversight . . . by military engineers and military specialists . . . . No aspect of the development, manufacture, and testing of the engines intended for use by the Army/Air Force escaped this close control.
>
> 8. The design, specification, and manufacture of the [UTC] aircraft engines intended for use by the Army/Air Force were approved by the appropriate Army/Air Force personnel. Army/Air Force engineers and inspectors were personally present . . . to oversee, inspect, and approve the work performed by [UTC] engineers and other personnel, including approval of any changes to engine design or specifications on all aircraft engines intended for use by the Army/Air Force. . . . [T]hese Army/Air Force specialists . . . controlled the design and manufacture of any aircraft engine produced . . . for the Army/Air Force.

(*Id.*, Ex. C ¶¶ 7-8) Mr. Shiffler further states:

> 9. The Army/Air Force provided extensive and detailed performance and construction specifications for the [UTC] aircraft engines intended for Army/Air Force use. The Army/Air Force[] . . . had detailed prints and drawings of every part used in such engines. These prints disclosed all materials contained in each part. The Army/Air Force inspectors knew about, and approved, all materials and all parts contained in the [UTC] engines intended for use by the Army/Air Force.
>
> 10. Any aircraft engine designed and manufactured by [UTC] for the Army/Air Force that did not meet the strict standards and specifications set forth by the Army/Air Force for that particular engine was rejected. . . .

(*Id.*, Ex. C ¶¶ 9-10)

As to warnings, Mr. Shiffler states that:

[5] Plaintiff's claims against UTC are based, in part, upon the decedent's alleged exposure to asbestos from Pratt & Whitney aircraft engines. (*See* D.I. 1 at ¶ 13; D.I. 73) For the purpose of this Report and Recommendation, Pratt & Whitney and UTC are referred to collectively as "UTC."

> 11. Any written materials, such as warnings or product manuals, that accompanied the engines . . . were similarly controlled and approved by the Army/Air Force. . . . In my opinion and based on my experience, [UTC] was prohibited from providing warnings on or with aviation engines it supplied to the Army/Air Force without prior consent and approval of the Army/Air Force. In addition, the Army/Air Force would instruct equipment suppliers like [UTC] to add or include warnings where such warnings were deemed appropriate by the Army/Air Force.

(*Id.*, Ex. C ¶ 11)

Based on the above affidavit, I find that UTC has satisfied its burden to show that Plaintiff's design defect and failure to warn claims are based upon UTC's conduct "acting under" the office of the Army/Air Force and its officers.

**C. Whether UTC Has Raised a Colorable Federal Defense**

With respect to the third element of the federal officer removal statute, UTC has raised a colorable federal defense to Plaintiff's claims, namely, the government contractor defense. The government contractor defense displaces state tort law where:

> (1) the United States approved reasonably precise specifications;
> (2) the equipment conformed to those specifications; and
> (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States.

*Boyle*, 487 U.S. at 512. As discussed previously, in cases involving failure to warn claims, federal courts have tailored the *Boyle* elements as follows:

> (1) the United States exercised its discretion and approved the warnings, if any;
> (2) the contractor provided warnings that conformed to the approved warnings; and
> (3) the contractor warned the United States of the dangers in the equipment's use about which the contractor knew, but the United States did not.

*MacQueen*, 2013 WL 6571808, at *4 (quoting *Hagen*, 739 F. Supp. 2d at 783).

The government contractor defense analysis "'is undertaken whilst viewing the facts in the light most favorable to [UTC], and does not address the merits of the defense.'" *Walkup*, 2013 WL 5448623, at *7 (quoting *Hagen*, 739 F. Supp. 2d at 783-84).

In the present case, the evidence offered by UTC is adequate on its face to make a plausible showing that the Army/Air Force approved reasonably precise specifications, and exercised direction and control, over the design, manufacture, and accompanying manuals and warnings of the aircraft engines supplied by UTC. For example, Mr. Shiffler's affidavit indicates that UTC "performed its work under the immediate . . . supervision and control" of the Army/Air Force, which "was exercised through contract documents, design and construction drawings, written specifications, and personal oversight." (D.I. 1, Ex. C ¶ 7) The Army/Air Force "had detailed prints and drawings of every part used in [UTC's] engines. These prints disclosed all materials contained in each part. The Army/Air Force inspectors knew about, and approved, all materials and all parts contained in [UTC's] engines . . . ." (*Id.*, Ex. C ¶ 9)

Mr. Shiffler further states that "[a]ny written materials, such as warnings or product manuals, that accompanied the engines . . . were similarly controlled and approved by the Army/Air Force." (*Id.*, Ex. C ¶ 11) According to Mr. Shiffler, UTC "was prohibited from providing warnings on or with aviation engines it supplied to the Army/Air Force without prior consent and approval . . . . In addition, the Army/Air Force would instruct equipment suppliers like [UTC] to add or include warnings where such warnings were deemed appropriate . . . ." (*Id.*)

Accordingly, the evidence is sufficient to plausibly show that the Army/Air Force was responsible for the design and manufacture of UTC's engines, and exercised control, which "transcend[ed] rubber stamping," over accompanying product manuals and warnings. *Hagen*, 739 F. Supp. 2d at 783.

The evidence is likewise adequate to show that UTC's engines conformed to the specifications of the Army/Air Force. With regard to design and manufacture, Mr. Shiffler states that "[a]ny aircraft engine designed and manufactured by [UTC] for the Army/Air Force that did

not meet the strict standards and specifications set forth by the Army/Air Force for that particular engine was rejected." (*Id.*, Ex. C ¶ 10) The evidence further demonstrates that UTC acted in accordance with Army/Air Force specifications by not providing warnings because it "was prohibited from [doing so] . . . without prior consent and approval." (*Id.*, Ex. C ¶ 11)

UTC has also satisfied the third element of the government contractor defense, which requires a contractor to have "warned the United States about the dangers in the use of the equipment that were known to the [contractor] but not to the United States." *Boyle*, 487 U.S. at 512. "Notably, as the language of the third prong suggests, a contractor is not required to warn the United States of hazards of which the United States was already aware." *Walkup*, 2013 WL 5448623, at *7.

UTC submitted the affidavit of William P. Ringo, Ph.D., CIH, CSP ("Mr. Ringo"), who attests to the knowledge of asbestos hazards possessed by the government and product manufactures during the relevant time period. (D.I. 1, Ex. D) Mr. Ringo worked in various settings as an industrial hygienist and safety professional, from 1970 to 2006. (*Id.*, Ex. D ¶¶ 2-6) According to Mr. Ringo:

> 9.   It is well known that the United States government was aware of the potential health hazards of working with or around asbestos-containing materials dating back to the 1930s. From the 1930s through at least the 1980s the United States government had state of the art knowledge regarding the potential health hazards of working with or around asbestos-containing materials. During this same time period the United States government, including the military, employed a cadre of industrial hygienists to investigate and study the health effects of working with or around asbestos-containing products. Over this time period, U.S. government personnel gathered studies, reports and opinions of leading experts, conducted their own studies and formulated training programs and procedures designed to mitigate or lessen any known health risks in working with or around asbestos-containing products.[6]

(*Id.*, Ex. D ¶ 9)

---

[6] Mr. Ringo's affidavit also suggests that UTC was unaware that "asbestos-containing materials presented any health hazard to employees working on aircraft engines." (*See* D.I. 1, Ex. D ¶ 10)

This evidence constitutes a plausible showing that the Army/Air Force was already familiar with the dangers of asbestos, such that UTC was not obligated to apprise the Army/Air Force of those risks. Thus, UTC has satisfied the third element of the government contractor defense and, consequently, has established a colorable federal defense under Section 1442(a)(1).

The court recognizes that courts in other districts have reached the opposite conclusion in factually analogous cases. Of particular note is *Glein v. Boeing Co.*, 2010 WL 2608284 (S.D. Ill. June 25, 2010),[7] in which the court granted the plaintiff's motion to remand because it found that the evidence submitted by defendant UTC – an affidavit of Mr. Shiffler similar to that proffered here – was insufficient to support removal for a failure to warn claim. The court reasoned:

> [T]he fact that warnings required prior [United States Navy] approval does not mean that UTC was prevented from giving adequate warnings about the asbestos contained in the aircraft engines that it manufactured for the USN, only that UTC had to have USN approval for the warnings that accompanied its products. Indeed, . . . there no evidence that the USN prevented UTC from complying with state-law duties to warn of the danger of asbestos contained in the engines UTC supplied to the USN . . . .

*Glein*, 2010 WL 2608284 at *3.

In the present case, the court respectfully declines to follow *Glein's* reasoning. "[T]he prevailing view is that an independent contractor does not have to show an express government prohibition on all warnings, but rather, must establish that the government 'exercised its discretion' regarding warnings to be placed on defendant's product." *MacQueen*, 2013 WL 6571808, at * 10 (quoting *Faddish v. Gen. Elec. Co.*, 2010 WL 4146108, at *9 (E.D. Pa. Oct. 20, 2010)). Furthermore,

> the Court is not called upon at this preliminary stage to pierce the pleadings or dissect the facts stated. Nor is it the Court's function at this stage to determine credibility, weigh the quantum of evidence or discredit the source of the defense. It is the sufficiency of the facts stated – not the weight of the proof presented – that matters.

---

[7] Neither party brought this case to the court's attention.

*Hagen*, 739 F. Supp. 2d at 782-83.

**D. Whether There is a Causal Nexus Between Plaintiff's Claims and UTC's Conduct Performed Under Color of a Federal Office**

As to the final element of federal officer removal jurisdiction, UTC has shown a causal nexus between Plaintiff's claims and UTC's conduct performed under color of a federal office.[8] The design defect claim arises directly from the specifications that the Army/Air Force provided to UTC, which allegedly required UTC to use asbestos-containing parts in the aircraft engines it manufactured and designed. The failure to warn claim arises directly out of the alleged involvement of the Army/Air Force in determining what warnings could be included with, or placed upon, engines manufactured by UTC. Consequently, a causal nexus exists because UTC's liability arises from its official duties, performed in accordance with government contracts. Therefore, UTC has met the requirements of the federal officer removal statute, and Plaintiff's Motion should be denied.

## V. CONCLUSION

For the foregoing reasons, I recommend that the court deny the Plaintiff's Motion to Remand.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed.

---

[8] In *MacQueen*, this court explained that

> the causal nexus element "is closely related to evidence supporting a colorable federal defense where a government contractor is the defendant because both elements require the defendant [to] show that it acted at the federal government's command." Accordingly, "resolving the causal nexus requirement is not difficult in light of the Court's colorability determination because the causal nexus analysis 'is essentially the same as [that associated with] the colorable defense requirement.'"

*MacQueen*, 2013 WL 6571808, at * 12 (alterations in original) (quoting *Hagen*, 739 F. Supp. 2d at 785).

R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: March, 17, 2014

Sherry R. Fallon
United States Magistrate Judge