IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MARY J. HICKS, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF ALVA HICKS, JR., AND MARY J. HICKS INDIVIDUALLY, | ) ) ) ) ) | |
| Plaintiff, | ) | Civil Action No. 13-393-SLR-SRF |
| v. | ) ) | |
| THE BOEING COMPANY, et al., | ) ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

Presently before the court in this asbestos-related personal injury action is a Motion to Dismiss Plaintiff's Complaint ("Motion to Dismiss" or "Motion"), filed by The Boeing Company ("Boeing"), pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (D.I. 92) The Plaintiff, Mary J. Hicks ("Plaintiff"), opposes Boeing's Motion. (D.I. 95) For the reasons that follow, I recommend that the court GRANT IN PART and DENY IN PART Boeing's Motion to Dismiss.

### II. BACKGROUND

Plaintiff filed this personal injury action against Boeing and other defendants on January 18, 2013, in the Superior Court of Delaware. (D.I. 1, Ex. A) The Complaint alleges, in part:

> a) Decedent ALVA N. HICKS, JR. experienced occupational and bystander exposure to asbestos while he served in the U.S. Army and U.S. Airforce [sic] from 1941 to 1963 as a Major Retired Flyer and while he worked as a self-employed construction worker from 1945 to 1947, at Dixie Bookbinding Co. in Jackson, Mississippi as a shipper, and for the State of Mississippi in Jackson, Mississippi as a Grain Inspector until he retired in 1973. Decedent ALVA N. HICKS, JR. was exposed to asbestos-containing products and equipment including, but not limited to, asbestos-containing pumps, valves,

1

>  packing, gaskets, insulation, boilers, turbines, cooling towers, pipe, paint, HVAC equipment, engines, joint compound, brakes, clamps, and raw asbestos.
>
>  22.   Decedent ALVA N. HICKS, JR. was exposed to asbestos and/or asbestos-containing products which were mixed, mined, manufactured, distributed, sold, removed, installed and/or used by the Defendants.

(D.I. 73 ¶ 21-22)

On March 11, 2013, the case was removed to this court by Defendant United Technologies Corporation, pursuant to 28 U.S.C. § 1442(a)(1), the federal officer removal statute.[1] (D.I. 1) On April 12, 2013, Plaintiff filed a Motion to Remand to State Court (D.I. 13), which this court subsequently denied. (*See* D.I. 172)

Plaintiff filed her First Amended Complaint on July 11, 2013. (D.I. 73) On August 5, 2013, Boeing filed the pending Motion to Dismiss. (D.I. 91)

### III.   LEGAL STANDARD

A complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (interpreting Fed. R. Civ. P. 8(a)) (internal quotations marks omitted). A complaint does not need detailed factual allegations; however, "a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 545 (alteration in original) (citation omitted). In other words, "a complaint must contain sufficient factual matter,

---

[1] The federal officer removal statute permits removal of a state court action to federal court when, *inter alia*, such action is brought against "[t]he United States or an agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office." 28 U.S.C. § 1442(a)(1).

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

When presented with a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court conducts a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the court separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Id.* at 210-11. Second, the court determines "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). In assessing the plausibility of a claim, the court must "'construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Fowler*, 578 F.3d at 210 (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).

At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

## IV. DISCUSSION

Boeing argues that the Complaint "exclusively consists of generalized, vague, and factually devoid allegations and legal conclusions." (D.I. 92 at 2) Boeing further contends that the Complaint is deficient under Rule 8 because it does not identify any Boeing product to which the Plaintiff was allegedly exposed or the location or time frame of such exposure. (*Id.* at 15) Thus, Boeing maintains that the Complaint should be dismissed because it lacks sufficient factual content to allow the court to draw a reasonable inference that Boeing is liable for the

misconduct alleged in the Complaint. (*Id.* at 2, 5, 12)

Plaintiff counters that the Complaint provides adequate notice of the claims asserted against Boeing and, as such, it complies with the requirements of Rule 8. (D.I. 95 at 3) Plaintiff argues that she is not required at this stage of the proceedings to identify the specific asbestos-containing products in issue relative to each Defendant. (*Id.* at 4-5) Plaintiff further contends that Boeing's Motion should be denied because the Complaint meets the requirements of the Delaware Superior Court's Standing Order No. 1. (*Id.* at 3 (citing Standing Order No. 1, In re: Asbestos Litig., No. 77C-ASB-2 (Del. Super. Ct. Apr. 29, 2011))

As a preliminary matter, the court notes that "once a case has been removed to federal court, it is settled that federal rather than state law governs the future course of proceedings." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 427 (1974). Thus, the guidelines for asbestos actions in Delaware State courts are irrelevant in the context of the pending Motion to Dismiss, as are Plaintiff's assertions concerning the Complaint's adequacy under such guidelines.

Furthermore, the court is not persuaded by Boeing's argument that the Complaint should be summarily dismissed because it does not identify the specific Boeing product that is the subject of Plaintiff's claims.[2] *See Coene v. 3M Co.*, 2011 WL 3555788, at *3 (W.D.N.Y. Aug. 11, 2011) ("[The defendants] ought to know whether they sold [the general type of product in issue] between [a specific time period]. Consequently, they can frame an answer to the Complaint. Additional information about the specific products at issue can be developed during discovery."); *Coleman v. Boston Scientific Corp.*, 2011 WL 1532477 at *2-5 (E.D. Ca. Apr. 20, 2011) (denying motion to dismiss products liability complaint which alleged that defendant

---

[2] This finding is limited to the facts of this case.

4

manufactured defective surgical "mesh product," but did not identify a particular product: "Imposing on plaintiffs the burden of specifically identifying a device by reference to a specific product line or model number, without the benefit of discovery, could create an insurmountable pleading burden in some cases."); *Winslow v. W.L. Gore & Assoc, Inc.*, 2011 WL 866184, at *2 (W.D. La. Jan. 21, 2011) ("[T]his is a products liability case where almost all of the evidence is in the possession of defendant or other entities. Proof will necessarily be technical in nature and it is likely impossible for plaintiff to state more specific allegations regarding defects in manufacture and design without first having the benefit of discovery and of expert analysis, neither of which is required in order to file suit."); *Hemme v. Airbus, S.A.S.*, 2010 WL 1416468, at *3 (N.D. Ill. Apr. 1, 2010) (rejecting defendant's argument, in products liability action involving defective electrical components in passenger jet, that the complaint's use of the "generic word 'wiring'" was insufficient, and that plaintiff had to "identify the particular product that was allegedly defective").

Plaintiff's Complaint asserts several theories of liability, as set forth in Counts III through X, including: negligence (Count III), recklessness/punitive damages (Count IV), strict product liability (Count V), fraudulent concealment (Count VI), fraudulent misrepresentation (Count VII), conspiracy (Counts VIII and IX), and loss of consortium (Count X). It must be noted, however, that deciphering these claims was no easy task. Indeed, the claims that the counts of the Complaint purport to assert are not clearly pled. Furthermore, the briefs submitted by the parties offered little help, as both parties failed to analyze each count under the *Iqbal/Twombly* standard – a necessary step in resolving any Rule 12(b)(6) motion.

Plaintiff argues that the court should apply Mississippi law to the claims alleged in the Complaint. (D.I. 73 ¶ 23; D.I. 95 at 6) For purposes of the pending Motion, Boeing does not

dispute Plaintiff's choice of law. (*See* D.I. 92 at 2, 7) For the reasons that follow, the Complaint contains sufficient factual allegations to support only some of Plaintiff's claims. Therefore, Boeing's Motion to Dismiss should be granted in part and denied in part.

**A. Negligence**

In order to establish a claim for negligence under Mississippi law, a plaintiff must show: (1) the defendant owed her a duty (2) the defendant breached that duty, and (3) plaintiff sustained damages (4) that were proximately caused by defendant's breach. *Crain v. Cleveland Lodge 1532, Order of Moose, Inc.*, 641 So. 2d 1186, 1189 (Miss. 1994).

In the present case, Plaintiff's negligence claims, which appear in Count III, are apparently based on defective products (i.e., products made out of, or containing asbestos) that were allegedly mined, manufactured, distributed, and/or produced by the Defendants. (*See generally* D.I. 73 at 5-7) Product liability actions in Mississippi are governed by the Mississippi Products Liability Act ("MPLA"), Miss. Code Ann. § 11-1-63(a). "Numerous district courts have recognized that the MPLA subsumes common law negligence and misrepresentation claims based on a defective product." *Gardley-Starks v. Pfizer, Inc.*, 917 F. Supp. 2d 597, 602 (N.D. Miss. 2013) (citing cases).[3] Therefore, to the extent Plaintiff asserts negligence claims arising from alleged product design defects, they are dismissed for the same reasons as those MPLA claims, as discussed below. To the extent Plaintiff asserts negligence claims arising from omitted or inadequate product warnings, the claims are subsumed by the MPLA.

---

[3] The MPLA was amended on March 17, 2014 to include the following relevant language (noted in italics), acknowledging that the MPLA subsumes negligence claims, among others, based on a defective product: "in any action for damages caused by a product, *including, but not limited to, any action based on a theory of strict liability in tort, negligence or breach of implied warranty*, except for commercial damage to the product itself: . . . ." Miss. Code Ann. § 11-1-63 (1972) (amended 2014).

6

## B. Strict Product Liability Actions Under Mississippi Law

The MPLA, which governs product liability actions in Mississippi, provides, in pertinent part:

> (a) The manufacturer or seller of the product shall not be liable if the claimant does not prove by the preponderance of the evidence that at the time the product left the control of the manufacturer or seller:
> (i) 1. The product was defective because it deviated in a material way from the manufacturer's specifications or from otherwise identical units manufactured to the same manufacturing specifications, or
> 2. The product was defective because it failed to contain adequate warnings or instructions, or
> 3. The product was designed in a defective manner, or
> 4. The product breached an express warranty or failed to conform to other express factual representations upon which the claimant justifiably relied in electing to use the product; and
> (ii) The defective condition rendered the product unreasonably dangerous to the user or consumer; and
> (iii) The defective and unreasonably dangerous condition of the product proximately caused the damages for which recovery is sought.

Miss. Code Ann. § 11-1-63(a).

Mississippi follows the strict liability approach for defective products set forth in Restatement (Second) of Torts § 402A. *See, e.g., Scordino v. Hopeman Bros.*, 662 So. 2d 640, 642 (Miss. 1995); *Coca Cola Bottling Co. v. Reeves*, 486 So. 2d 374, 377 (Miss. 1986); *State Stove Mfg. Co. v. Hodges*, 189 So. 2d 113, 118 (Miss. 1966), *cert. denied*, 386 U.S. 912 (1967). Section 402A defines who may be liable for a defective product as follows:

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
> (a) the seller is engaged in the business of selling such a product, and
> (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

Restatement (Second) of Torts § 402A.

7

### 1. Design Defect

In order to state a claim for defective product design under Mississippi law, the plaintiff must establish that at the time the product left the control of the manufacturer or seller: (1) the product was designed in a defective manner; (2) the defective condition rendered the product unreasonably dangerous to the user or consumer; and (3) the defective and unreasonably dangerous condition of the product proximately caused the damages for which recovery is sought. Miss. Code Ann. § 11-1-63(a). The plaintiff must also establish that:

> (i) The manufacturer or seller knew, or in light of reasonably available knowledge or in the exercise of reasonable care should have known, about the danger that caused the damage for which recovery is sought; and
> (ii) The product failed to function as expected and there existed a feasible design alternative that would have to a reasonable probability prevented the harm.

Miss. Code Ann. § 11-1-63(f).

In the present case, Plaintiff's claims for design defect, which appear in Counts III and V, should be dismissed because they do not meet the pleading standard set forth in Rule 8. Plaintiff alleges in her Complaint that Defendants mined, manufactured, distributed and/or produced asbestos or asbestos-related materials to which Mr. Hicks was exposed (D.I. 73 ¶¶ 22, 28), that these products were "inherently dangerous" (*id.* ¶ 37), that Defendants "neither packaged nor provided [the products] in a method proper for [their] intended use" (*id.* ¶ 40), that Defendants knew or should have known that the use of these products was hazardous to the health of workers such as Mr. Hicks (*id.* ¶¶ 31, 43, 47), and finally, as a proximate result of these acts, Plaintiff and Mr. Hicks suffered damages (*id.* ¶¶ 29, 32, 35, 41, 45, 59).

The Complaint alleges in conclusory fashion that the products were "unreasonably dangerous," but fails to assert that the products were defective in design or even suggest generally the nature of any defect. The complaint fails to explain – even in the simplest terms –

what the defect is.[4] Moreover, the Complaint fails to allege that there existed a feasible design alternative that would have had a reasonable probability of preventing the harm. *See* Miss. Code Ann. § 11-1-63(f). Consequently, Plaintiff's claim for design defect should be dismissed without prejudice.[5] *See Chatman v. Pfizer, Inc.*, 2013 WL 1305506, 4 (S.D. Miss. March 28, 2013) (holding that plaintiff did not properly plead a design defect claims because she failed to "identify the defect in the design" or "allege that a viable alternative design exist[ed]"); *Deese v. Immunex Corp.*, 2012 WL 463722, at *3 (S.D. Miss. Feb. 13, 2012) (explaining that conclusory allegations that defendants "'designed and manufactured . . . an unreasonably dangerous pharmaceutical product,' that was 'unsafe and harmful to Plaintiff[,]'" unaccompanied by any factual support, including what was defective about the design, failed to state claim for design defect).

### 2. Failure to Warn

A product may be found defective under Mississippi law if it "fail[s] to contain adequate warnings." Miss. Code Ann. § 11-1-63(a)(i)(2). *See also Swan v. I.P., Inc.*, 613 So. 2d 846, 852 (Miss. 1993) ("Lack of an adequate warning is a defect which makes a product unreasonably dangerous for strict liability purposes." (citations omitted)). Therefore, manufacturers and sellers have "a duty, as a matter of law, to warn of any known hazards" associated with their products. *Scordino*, 662 So. 2d at 646 (citing *Swan*, 613 So. 2d at 852).

Plaintiff has adequately alleged in Counts III and V claims for failure to warn consistent with the requirements of Rule 8. Plaintiff alleges in her Complaint that Defendants, including Boeing, mined, manufactured, distributed, and/or produced asbestos or asbestos-related materials

---

[4] In fact, the words "defect" or "defective" do not appear anywhere in the Complaint.

[5] It is well-settled that when a complaint is dismissed for lack of factual specificity, the plaintiff "should be given a reasonable opportunity to cure the defect, if [s]he can, by amendment of the complaint . . . ." *Shane v. Fauver*, 213 F.3d 113, 116 (3rd Cir. 2000) (citation omitted)

to which Mr. Hicks was exposed (D.I. 73 ¶¶ 22, 28), that these products were "inherently dangerous" and "neither packaged nor provided in a method proper for [their] intended use" (*id.* ¶¶ 37, 40), that Defendants knew or should have known that the use of these products was hazardous to the health of workers such as Mr. Hicks (*id.* ¶¶ 31, 43, 47), that Defendants failed to adequately warn Mr. Hicks as to the hazards involved (*id.* ¶¶ 31, 34, 43, 47), and finally, as a proximate result of these acts, Plaintiff and Mr. Hicks suffered damages (*id.* ¶¶ 29, 32, 35, 41, 45, 59). These allegations are sufficient to state a claim for failure to warn and, therefore, Boeing's Motion to Dismiss Plaintiff's failure to warn claims should be denied.

At this stage of the proceedings, the court addresses only the adequacy of the pleadings. Whether Plaintiff's failure to warn claims have merit is an issue reserved for the summary judgment stage or trial.

### 3. Breach of Express Warranty

Plaintiff's claims for breach of express warranty, which appear in Count V, should be dismissed. In order to state a claim for breach of express warranty, a plaintiff must establish that "the product breached an express warranty or failed to conform to other express factual representations upon which the claimant justifiably relied in electing to use the product." Miss. Code Ann. § 11-1-63(a)(i)(4). The Complaint includes no specific facts in support of Plaintiff's breach of warranty claim. Instead, Plaintiff simply alleges that the Defendants "warranted the asbestos products for their intended purpose and use" and "violated this warranty [because] the product was neither packaged nor provided in a method proper for its intended use." (D.I. 73 ¶ 40) Plaintiff fails to identify any specific express warranty, or any specific factual representation by any Defendant upon which she or Mr. Hicks relied. Consequently, Plaintiff's claims for breach of express warranty should be dismissed without prejudice. *See Garcia v. Premier Home*

10

*Furnishings*, 2013 WL 4015062, at *6 (S.D. Miss. Aug. 6, 2013) (applying Rule 12(b)(6) analysis and finding no possibility of recovery where complaint contained no specific facts regarding an express warranty).

### 4. Punitive Damages Under the MPLA

Under Mississippi law, the standard for punitive damages "in any action," including those under the MPLA, is as follows:

> Punitive damages may not be awarded if the claimant does not prove by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud.

Miss. Code Ann. § 11-1-65(1)(a).

In Count IV, Plaintiff alleges that Defendants "knew that asbestos exposure could result in serious injury," but failed to take adequate steps to warn others of the risks of exposure. (D.I. 73 ¶¶ 31, 33-34) Plaintiff further alleges that Defendants failed to adequately package, distribute and use asbestos in a manner that would minimize the escape of asbestos fibers, and failed to remedy such failures, and that such conduct was wanton, willful, and displayed a reckless indifference to the health and safety of Mr. Hicks. (*Id.* ¶ 34) Such allegations, if found to be true, could support an award of punitive damages. Therefore, Boeing's Motion to Dismiss Plaintiff's claim for punitive damages should be denied.

### C. Fraudulent Concealment and Misrepresentation

To assert a claim for fraud (or deceit) under Mississippi law, a plaintiff must establish the following elements:

> (1) a representation; (2) its falsity; (3) its materiality; 4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on the truth; (8) his right to rely thereon; (9) his consequent proximate injury.

11

*Black v. Carey Canada, Inc.*, 791 F. Supp. 1120, 1123 (S.D. Miss. 1990) (quoting *Whittington v. Whittington*, 535 So. 2d 573, 585 (Miss. 1988)). "To state a claim for fraud, a Complaint must allege all nine of these elements." *Peters v. Metro. Life Ins. Co.*, 164 F. Supp. 2d 830, 834 (S.D. Miss. 2001). *See also Levens v. Campbell*, 733 So. 2d 753, 761-62 (Miss. 1999). "In order to establish fraudulent misrepresentation, the elements of fraud must be proven." *Levens*, 733 So. 2d at 762 (citing *Spragins v. Sunburst Bank*, 605 So. 2d 777, 780 (Miss. 1992)). In order to prove fraudulent concealment, the plaintiff must demonstrate that the (1) defendant took some action, affirmative in nature, (2) which was designed or intended to prevent, (3) and which did prevent, (4) the discovery of the facts giving rise to the fraud claim. *Davidson v. Rogers*, 431 So. 2d 483, 485 (Miss. 1983).

"In alleging fraud . . . , a party must state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b). The purpose of the heightened pleading standards is to require the plaintiff to "state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007); *see also Seville Indus. Mack Corp. v. Southmost Mack Corp.*, 742 F.2d 786, 791 (3d Cir. 1984). To satisfy this heightened standard, plaintiffs claiming fraud must allege, at a minimum, the "who, what, when, where and how" of the events at issue, "or otherwise inject precision or some measure of substantiation into a fraud allegation." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276 (3d Cir. 2006); *Frederico*, 507 F.3d at 200. Where allegations of fraud are brought against multiple defendants, "the complaint must plead with particularity . . . the [specific] allegations of fraud" applicable to each defendant. *MDNet, Inc. v. Pharmacia Corp.*, 147 F. App'x 239, 245 (3d Cir. 2005) (citation omitted).

In the present case, Counts VI and VII allege generally that the Defendants, as a group, were aware that exposure to asbestos was hazardous, and they intentionally misrepresented and/or concealed the dangers of asbestos from Mr. Hicks, knowing that he would be exposed to asbestos. (*See* D.I. 73 at 10-12) The alleged fraudulent concealment and misrepresentations are pled collectively as to all Defendants, and the Complaint fails to identify which Defendants may have said what, when, and where. (*See id.*) Moreover, while Plaintiff acknowledges in her answering brief the elements that are required to plead a prima facie case of fraud, she fails to explain how all of the elements are satisfied in the instant case. (*See* D.I. 95 at 9) Plaintiff's allegations fall short of establishing fraud and lack the specificity that is required by Rule 9(b). Consequently, Plaintiff's fraud claims should be dismissed without prejudice.

### D. Conspiracy

Under Mississippi law, a conspiracy is "a combination of two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose unlawfully, the persons agreeing in order to form the conspiracy," and the "persons must agree . . . in order for a conspiracy to exist." *Brown v. State*, 796 So.2d 223, 226-27 (Miss. 2001). *See also Black v. Carey Canada, Inc.*, 791 F. Supp. 1120, 1124 (S.D. Miss. 1990); *Shaw v. Burchfield*, 481 So. 2d 247, 255 (Miss. 1985).

In the present case, Plaintiff's conspiracy claims, which appear in Counts VIII and IX, should be dismissed because they consist of mere conclusory allegations. The Complaint alleges generally that the Defendants, as a group, "knowingly and wilfully conspired," and "aided and abetted other manufacturers of asbestos products," to conceal and misrepresent the risks of asbestos exposure from Mr. Hicks and, "[a]s a result of this conspiracy, [Mr. Hicks] was exposed to asbestos and suffered [] injuries." (D.I. 73 ¶¶ 50-56) Even if these conclusory allegations were

to be credited for purposes of the pending Motion, Plaintiff has not alleged the elements of a civil conspiracy claim. "It is elementary that a conspiracy requires an agreement between the co-conspirators." *Gallagher Bassett Servs., Inc. v. Jeffcoat*, 887 So. 2d 777, 786 (Miss. 2004) (citing *Brown*, 796 So. 2d at 226-27). The Complaint, however, includes no factual allegations of any agreement among the Defendants. Furthermore, Plaintiff has not alleged how this conspiracy operated or existed with any specificity. Rather, Plaintiff merely asserts general allegations of conspiracy. This is not sufficient. *See Feliz v. Kintock Group*, 297 F. App'x 131, 136 (3d Cir. 2008) (explaining that "mere 'conclusory allegations of concerted action' are insufficient to satisfy the notice-pleading standard" for a civil conspiracy claim (citation omitted)). Consequently, the conspiracy claims should be dismissed without prejudice because Plaintiff does not allege facts giving rise to a plausible inference of the existence of a civil conspiracy.

### E. Loss of Consortium

Under Mississippi law, a loss of consortium claim derives its viability from the injured spouse's claim for injuries. *See McCoy v. Colonial Baking Co.*, 572 So. 2d 850, 854 (Miss. 1990). As discussed previously, the Complaint contains sufficient factual allegations to support certain of Plaintiff's claims, which allegedly caused Mr. Hicks to suffer various injuries. Consequently, Count X of the Complaint states a viable claim for loss of consortium.

### V. CONCLUSION

For the foregoing reasons, I recommend that the court grant in part and deny in part Boeing's Motion to Dismiss. Specifically, Boeing's Motion should be granted as to Plaintiff's claims for design defect (in Counts III and V) - and negligence claims other than for failure to warn (Count III), breach of express warranty (Count V), fraudulent concealment (Count VI),

fraudulent misrepresentation (Count VII), and conspiracy (Counts VIII and IX).[6] Plaintiff's remaining claims under Counts III, IV, V, and X should not be dismissed.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: March 21, 2014

Sherry R. Fallon
United States Magistrate Judge

---

[6] The court does not address amendment of the pleadings as there is no pending application for such relief.

15